GEORGE R. NORTON, PLAINTIFF, *v.* JENNIE TUFTS, FISHER S. HARRIS, ADMINISTRATOR OF THE ESTATE OF ELBRIDGE TUFTS, DECEASED, JOSEPH WILLIAM TAYLOR, ELEANOR B. WICKEL, OTHERWISE KNOWN AS ELEANOR B. TUFTS, AND JOHN T. SNELSON, DEFENDANTS.

MARITAL SEPARATION — ADULTERY — DOWER RIGHTS OF WIFE — UNDER THIRTEEN EDW. I — RE-ESTABLISHMENT OF DOWER BY EDMUNDS-TUCKER ACT — HOW WAIVED OR FORFEITED — WIDOW'S CLAIM OF DOWER — ESTOPPEL IN PAIS — REQUISITES OF.

1. *Marital Separation — Adultery — Dower Rights of Wife — Under Thirteen Edw. I.*

A marital separation by mutual agreement, even if followed by adultery, was not sufficient to disendow the wife, under thirteen Edw. I, until the husband by offering to take her back, had withdrawn from the contract of separation and the wife had thereupon refused such offer.

2. *Re-establishment of Dower by Edmunds-Tucker Act — How Waived or Forfeited.*

> The right of dower in Utah was abolished in 1872, and remained so abolished until re-established by the Edmunds-Tucker Act, in March, 1887, and thereafter dower could only be waived or forfeited as in said act provided.

3. *Widow's Claim of Dower — Estoppel in pais — Requisites of.*

> A widow may by mere silence estop herself *in pais*, from claiming dower in her husband's estate. But where a concealment by silence is relied upon for estoppel, the party against whom estoppel is claimed must have knowledge of the facts and of the action about to be taken.

(Decided May 25, 1899.)

Appeal from the Third District Court, Salt Lake County, Hon. A. G. Norrell, *Judge.*

Action by plaintiff to foreclose a mortgage.

Defendant Wickel, respondent here, answered, setting up that she was the lawful wife of defendant Tufts at the time of his death, and as such entitled to a dower interest in the mortgaged premises.

From a judgment and decree in favor of defendant Wickel, plaintiff appeals. *Affirmed.*

*Messrs. Stephens & Smith,* for appellant.

The trial court found that Mrs. Wickel was entitled to dower in these lands. Appellant claims that this decision was error, and claims that Mrs. Wickel can not claim dower, for two reasons: "First, the thirteenth statute of Edward I has become incorporated into the common law of the United States, and which denies dower to a wife who has left the domicile of her husband, and committed adultery. 4 Kent, 52, 53, and note; see also Scribner on Dower, Vol. 2, p —— ; *Bell* v. *Nealy*, 19 Am. D, 168; 2 Harmon on Estoppel, 909; *Reel* v. *Elder*, 62 Penn. St.,

316; *Note to Barret* v. *Failing,* 111 U. S., 523; S. C. 28, L. C. Ed., 505.

Appellants claim that Mrs. Wickel is estopped by estoppel *in pais* from claiming dower as against this mortgage.

As early as 1804 the Supreme Court of the United States held that a widow might be estopped by her acts from claiming dower in her husband's lands. *Deshler* v. *Beery,* 4 Dal., 301, Vol. 1, L. C. Ed., 842; see also *Edgar* v. *Richardson,* 31 Am. Rep., 571; *Smiley* v. *Wright,* 2 Ohio, 506; *Doughney* v. *Topping,* 4 Paige, 94; *Wright* v. *De Groff,* 14 Mich., 164; 1 Wash. on Real Property, 264; *Conolly* v. *Branstler,* 96 Am. D., 278; *Wiseman* v. *Macy,* 83 Am. D., 316 and note.

*Messrs. Brown & Henderson,* for respondent.

The undisputed evidence shows that there was a valid marriage between Eleanor Wickel and Elbridge Tufts.

The so-called "church divorce" was absolutely void and illegal upon its face; moreover, there was no collusion employed in obtaining it, and Eleanor Wickel can not be bound by it to any extent.   Her marriage to Elbridge Tufts, therefore, remained in full force and effect.   *Cartwright* v. *Mc Gowan,* 121 Ill., 388; *Thomas* v. *Thomas,* 124 Pa. St., 646.

There was no dissolution of the marriage contract between Eleanor Wickel and Elbridge Tufts for the wife's misconduct, nor was there any dissolution of it whatever, and Eleanor Wickel's right of dower still remains. Bishop on M. & S. D., Sec. 1521; *Reel* v. *Elder,* 62 Pa. St., 308, 316; *Rawlins* v. *Battel,* 1 Houst. (Del.), 224.

Eleanor Wickel has been brought up as a party defendant; her interest in the mortgaged premises — as the

pleadings and proof show — is a hostile, adverse, prior, and paramount interest, and can not be determined in a foreclosure suit.    *Bank* v. *Thomas*, 55 N. Y., 7; *Mc Comb* v. *Spangler*, 71 Cal., 419; *Cody* v. *Bean*, 93 Cal., 578; *Ord* v. *Bartlett*, 83 Cal., 428.

Whatever interest Norton may have acquired in the mortgaged premises was acquired with notice of Eleanor Wickel's claim, and was of no effect whatever as against Eleanor B. Wickel.    3 Stels (Ky.), 486; *Boils* v. *Boils* (Tenn.), 1 Cdd., 284; *Le Neve* v. *Le Neve*, 2 Leading Cases in Equity (H. W. notes), 127.

ROLAPP, DIST. J.

The defendant Eleanor B. Wickel, otherwise known as Eleanor B. Tufts, was duly married to the defendant Elbridge Tufts in 1869, and they lived together as husband and wife until 1870, when, by mutual agreement between the parties (evidenced by articles of separation signed by them in the presence of an officer of the Mormon Church) they obtained what was called a "church divorce," which each party believed to be valid and binding upon them.    Some time after entering into this agreement the defendant Elbridge Tufts married one Eliza Tanner, and had one child by her.    The said Eliza Tanner died, and thereafter Elbridge Tufts married one Ann Lawrence; who also died while living with him as a husband, and thereafter in 1885, he married the defendant Jennie Tufts, with whom he lived until his death in 1895. Shortly after the agreement for separation had been signed by the defendant Elbridge Tufts and Eleanor B. Wickel, and prior to the marriage ceremony between Elbridge Tufts and Eliza Tanner, the defendant Eleanor B. Wickel, or Tufts, also married another person, one John Wickel, with whom she lived about twenty-one years,

and had one child by him.  Some short time prior to
July 7, 1891, the defendant Eleanor B. Wickel was
informed that the "church divorce" was illegal, and on
July 25, 1891, she commenced an action for divorce
against the defendant Elbridge Tufts, and from thence on
she ceased to live or co-habit with John Wickel.  The
divorce proceedings were still pending in 1895, when
Elbridge Tufts died.   On December 4, 1891, the defend-
ant Elbridge Tufts and Jennie Tufts executed to the
plaintiff a promissory note for $6,000, due one year
after date, and secured the same by a mortgage upon cer-
tain premises in Salt Lake City, all of which had been
acquired by Elbridge Tufts subsequent to March, 1887.
The plaintiff did not know of the existence of Eleanor B.
Wickel, or of her claim to be the wife of Elbridge Tufts,
until after he had loaned the money evidenced by said
note and mortgage.   In July, 1893, the defendant
Elbridge Tufts conveyed all of the mortgaged premises to
the defendant Jennie Tufts, and the defendant Elbridge
Tufts having died in April, 1895, the defendant Fisher
S. Harris was appointed administrator of his estate, and
the plaintiff's mortgage loan not being paid, he com-
menced this action on foreclosure in June, 1896, and all
of the defendants defaulted except Eleanor B. Wickel,
who filed an answer setting forth substantially the fore-
going facts.   A hearing was had, and a judgment ren-
dered in favor of the plaintiff, and against the defendant
Jennie Tufts for $6,832, decreeing also that all of the
defendants excepting Eleanor B. Wickel be foreclosed of
all their interest in the premises, and that the defendant
Eleanor B. Wickel was the lawful wife of Elbridge Tufts
at the time of his death, and as such is entitled to a dower
interest in said mortgaged premises, unaffected by said
mortgage.   The plaintiff appeals to this court from the

latter portion of that judgment and decree, and relies upon two grounds for a reversal:

First, That Eleanor B. Wickel committed adultery, and therefore comes within the provisions of 13 Edward I, which it is claimed has become incorporated into the common law of this State, and which denies dower to a wife who has voluntarily left the domicile of her husband and committed adultery, and,

Second, That by her acts, as admitted in her answer, she is estopped from claiming dower as against this plaintiff.

As to the first ground relied upon by the appellant we are of the opinion that it is not tenable, because even if the statute of 13 Edw. I had in 1870 become incorporated into the common law of this State, yet for two reasons that act could have no application in this case: First, because under the provisions of that act a separation which was the result of a mutual agreement of the parties, even if followed by adultery, was never sufficient to disendow the wife ; at all events not until the husband by an offer to take her back had withdrawn from the contract to separate, and such offer had been refused by the wife.    Scribner on Dower, p. 517, *et seq.*

And, second, because the only right of dower was abolished in Utah in 1872, and was not re-established until it became a statutory right by the provisions of the Edmunds-Tucker Act, which became effective in March, 1887. That statute provided the only two methods by which dower could be waived or forfeited, to wit :   Either by the wife lawfully releasing her right to dower, or when a divorce had been granted, dissolving the marriage contract for the misconduct of the wife.    But elopement, followed by adultery, was not named in such statute as a means by which a wife should forfeit her right of dower. Comp. Laws Utah, 1888, page 119, *et seq.*

Whatever dower rights the defendant Eleanor B. Wickel claims must have had their inception in whatever conditions existed between the parties at the time the Edmunds-Tucker Act became effective, in March, 1887. It is not necessary for us to decide whether the legal wife had dower right in all the property possessed at that time by her husband in fee simple, because the record shows that all the property involved in this case was acquired by the defendant Elbridge Tufts subsequent to March, 1887. It is clear that whoever was the legal wife of Elbridge Tufts at that time, and survived him as his undivorced wife, by Section 18 of the Edmunds-Tucker Act became upon his death "endowed of a third part of all the lands whereof her husband was seized of an estate of inheritance at any time during the marriage," and such endowment could be defeated only by proof that the wife had "lawfully released her right thereto."

That Eleanor B. Wickel was the lawful wife of Elbridge Tufts in 1887 is absolutely clear, and the pendency of a divorce proceeding between the parties at the time of the husband's death establishes the fact that that marriage contract was not dissolved, neither for the misconduct of the wife, nor for any other reason. It is not claimed that Eleanor B. Wickel expressly released her right of dower at any time, but the appellant contends that the acts of the defendant Eleanor B. Wickel, set forth in the record in this case, constitute an estoppel *in pais*, which prevents her from claiming dower as against this mortgagee. The only acts charged against her are that she permitted her husband to live with another woman with whom he had publicly entered into a pretended marriage relation, and that she, while living with another man in apparent marital relation, might have misled others.

That a widow may estop herself *in pais* from claiming

dower in her husband's estate can not be questioned, and such estoppel may, of course, be created by mere silence. But the very requisites to constitute an estoppel *in pais,* where a concealment of facts by silence is relied upon, are that the party against whom the estoppel is claimed must have knowledge of the facts and of the action about to be taken. *Terre Haute R. R. Co.* v. *Rodel,* 89 Ind., 128.

And the concealment must have been practiced with the intention that it should be acted upon, or there must have been such negligence, amounting to a breach of duty, as would supply the place of intent. *Greenfield Bank* v. *Stowell,* 123 Mass., 196.

In this case it appears that prior to the time the plaintiff took this mortgage, Eleanor B. Wickel had commenced divorce proceedings against her husband in the proper courts in this State; and it is not claimed that she had any knowledge either of the plaintiff's purpose to loan her husband money, or of the fact that the latter executed the mortgage sought to be foreclosed. So that she was never able to advise plaintiff of her claim during any time that such information would have been of benefit to her.

We do not understand that mere silence, under such circumstances, would amount to an estoppel; because, while probably it would have been her duty to speak, and make known her claim, had she been advised that her husband was about to make the mortgage in question, yet prior to such proposed action she could not reasonably apprehend that her husband, after being made acquainted through the divorce proceedings with the fact that she claimed to be his wife, would execute a mortgage to the plaintiff, or any other person, and permit a woman having no interest in the property to assume to sign such docu-

ment for the apparent purpose of releasing dower. If the plaintiff in this case was misled, it was through the wrongs of Elbridge Tufts, and not through any negligence or fault of the defendant Eleanor B. Wickel.

We see no error in the record, and the judgment of the lower court is affirmed, with costs.

Bartch, C. J., and Baskin, J., concur.