Points Decided.

(June 23, 1908.)

ANNIE ·F. A. HILTON, Respondent, v. SAMUEL W. STEWART, Executor of the Estate of JOHN R. PARK, Deceased, Appellant.

[96 Pac. 579.]

FOREIGN JUDGMENTS — EVIDENCE — MARRIAGE — RES ADJUDICATA—ESTOPPEL.

1. Under sec. 2428, Rev. Stat., "All marriages contracted without this state, which would be valid by the laws of the country in which the same were contracted, are valid in this state."

2. The judgment and decree of the supreme court of the state of Utah, adjudging and decreeing a marriage performed in that state, to be a common-law marriage and to evidence which the following certificate was issued: "John Rockey Park, born Tiffin, Seneca, Ohio, 7 May, 1833. Annie Flora Armitage born Nottinghill, London, 19 February, 1853. The above parties were sealed by Prest. D. H. Wells in the presence of Emeline Free Young, at her residence in Salt Lake City, U. T., Dec. 5, 1872. The lady being on her supposed death bed. Daniel H. Wells,"—is admissible in evidence in an action in this state involving the marriage status between the same parties.

3. The judgment and decree of the supreme court of the state of Utah, adjudging and decreeing a marriage performed in that state to be valid, in an action involving the validity of such marriage, controls and governs this court, in an action in this state between the same parties involving the validity of such marriage and the marriage status of the parties thereto.

· 4. To make the matter *res adjudicata*, it is immaterial that the question alleged to have been settled by a former adjudication was determined in a different kind of proceeding or a different form of action from that in which the estoppel is claimed. The test is, was the question actually and directly in issue and judicially determined in the former suit between the same parties or their privies by a court of competent jurisdiction?

5. A person nominated as executor by a will probated in the state of Utah, and appointed as such in that state, and afterward appointed administrator (with the will annexed) in this state, represents said estate in both jurisdictions, and occupies the same position with reference to all controversies and suits by or against said estate, and in that respect, and to that extent, is the same person in both states.

6. The courts of Utah, having decided that a divorce granted by the Mormon church was illegal and void, and did not terminate the marriage relation between the parties thereto, in an action involving the validity of said divorce, fixed and determined the status of such parties, and controls and governs the courts of this state in an action involving the validity of such divorce.

7. A wife, who does not assert her rights to or interest in the property of her husband until after his death, even though living separate and apart from such husband, but does assert such right immediately after the death of such husband, and prosecutes her action with diligence, is not guilty of laches or estopped from asserting such right.

8. In an action involving the validity of a marriage and the right of a surviving wife or widow to her interest as such in her deceased husband's property, she is not estopped from maintaining such action on the ground of public policy, morality or decency, where it appears that she may have honestly believed that she had been legally divorced from her said husband, even though she has lived with another as his wife.

(Syllabus by the court.)

APPEAL from the District Court of the Sixth Judicial District, for Fremont County. Hon. James M. Stevens, Judge.

An action to determine the right of the wife to a one-half interest in the property of the husband at the time of his death, and to have such interest set off and decreed to said applicant upon the final settlement of said estate. Judgment for petitioner *affirmed.*

Barnard J. Stewart, and Jesse R. S. Budge, for Appellant.

The doctrine of *res adjudicata* cannot apply, for the reason the subject matter is not the same, the parties to the action are not the same, and the jurisdiction of the Utah courts does not extend over the subject matter and persons of which the Idaho court has jurisdiction. In order to render a matter *res adjudicata,* there must be the existence of four conditions, viz.: (1) Identity of the thing sued for; (2) Identity of the cause of action; (3) Identity of the person or parties to the action; (4) Identity of the quality in the persons for or against whom the claims are made. (24

Ency. of Law, 2d ed., 725, 728, 733, 735, cases cited; 765, 778, 779, 780; 9 Ency. of Pl. & Pr., 622, 626; 1 Herman on Estoppel and Res Adjudicata, secs. 115, 290-292.)

A probate decree is only binding as to the property actually before the court, i. e., that of which the decedent had died seised; and only upon those claiming such decree or some interest in the property; it is not binding upon any person who had no right to be present, offer testimony as to the matter before the court, and appeal therefrom. Therefore, it establishes the status of the widow only as to property before the court in the probate proceeding. (2 Black on Judgments, secs. 638, 638a; *Brigham v. Fayerweather,* 140 Mass. 411, 5 N. E. 265; *Malona v. Schwing,* 101 Ky. 56, 39 S. W. 523; *Bailey v. Sundberg,* 49 Fed. 583, 1 C. C. A. 387; *Shores v. Hooper,* 153 Mass. 228, 26 N. E. 846, 11 L. R. A. 308; *Sorenson v. Sorenson,* 68 Neb. 483, 94 N. W. 540, 98 N. W. 837, 100 N. W. 930, 103 N. W. 455; *Backdahl v. Grand Lodge,* 46 Minn. 61, 48 N. W. 454; *Morin v. St. Paul M. & N. Ry. Co.,* 33 Minn. 176, 22 N. W. 251; *Kosmerl v. Snively,* 85 Minn. 228, 88 N. W. 753; *Stacey v. Henke & Pillot,* 32 Tex. Civ. App. 462, 74 S. W. 925; *Bath v. Valdez,* 70 Cal. 359, 11 Pac. 724; *Walker v. Daley,* 80 Wis. 222, 49 N. W. 812; 1 Freeman on Judgments, 4th edition, sec. 319B, p. 581; 2 Id., sec. 611, p. 1063; *Van Camp v. Fowler,* 16 N. Y. Supp. 281, 61 Hun, 626; affirmed, 133 N. Y. 600, 30 N. E. 1147; *Chever v. Ching Hong Poy,* 82 Cal. 68, 22 Pac. 1081; *Chadburne v. Hartz,* 93 Minn. 233, 101 N. W. 68; *Sumner v. Sumner,* 121 Ga. 1, 48 S. E. 727; *In re Morris et al.,* 91 N. Y. Supp. 706, 100 App. Div. 479; *Reed v. Whipple,* 140 Mich. 7, 103 N. W. 548; 19 Ency. of Pl. & Pr. 1093, 1094; *Darcy v. Kelley,* 153 Mass. 433; 26 N. E. 1110; *Martin v. Tally,* 72 Ala. 23; *Woodruff v. Taylor,* 20 Vt. 72.)

The parties to this action are not the same as those to the Utah actions, and the thing sued for in the Utah cases was Utah real estate, in the Idaho cases is Idaho real estate, so the thing sued for is not the same. The identity of the causes of action is not the same; hence it cannot be *res adjudicata.* The tribunals of one state have no jurisdiction over persons

beyond its limits, and can only inquire into their applications to its citizens when exercising its conceded jurisdiction over the property within its limits. (1 Herman on Estoppel and Res Adjudicata, secs. 518, 623.)

The executor in Idaho and the executor in Utah are not, in contemplation of law, one and the same person; they received their authority in different jurisdictions, and are separate and distinct from each other, and a judgment against the executor of the Park estate in Utah could have no controlling effect in determining the marital status or property rights as against the executor in Idaho. (*Johnston v. McKinnon,* 129 Ala. 223, 29 South. 696; Story on Conflict of Law, sec. 522; *Aspden v. Nixon,* 4 How. (U. S.) 467, 11 L. ed. 1057; *Stacy v. Thrasher,* 6 How. (U. S.) 44, 12 L. ed. 337; *McLean v. Meek,* 18 How. (U. S.) 16, 15 L. ed. 277; *Low v. Bartlett,* 8 Allen, 259; 1 Freeman on Judgments, sec. 163; *Jefferson v. Beall,* 117 Ala. 436, 67 Am. St. Rep. 177, 23 South. 44; *Johnson v. Powers,* 139 U. S. 159, 11 Sup. Ct. 525, 35 L. ed. 112; *Johnson v. Johnson,* 63 Hun, 4, 17 N. Y. Supp. 570; *Ela v. Edward,* 13 Allen, 48, 90 Am. Dec. 174; *Reynolds v. Stockton,* 140 U. S. 272, 11 Sup. Ct. 773, 35 L. ed. 464; *Price v. Mace,* 47 Wis. 23, 1 N. W. 336.)

A judgment against an ancillary administrator furnishes no cause of action, and is not even evidence against a domiciliary executor or administrator, and likewise a judgment against a domiciliary administrator creates no cause of action and is not evidence against an ancillary administrator; the rule is the same whether the domiciliary and ancillary administrators be the same or different persons. (2 Wharton on Conflict of Laws, 1382, sec. 629A; *Johnson v. Powers,* 139 U. S. 156, 11 Sup. Ct. 525, 35 L. ed. 112; *Hill v. Tucker,* 13 How. (U. S.) 458, 14 L. ed. 223; *Stacey v. Thrasher,* 6 How. (U. S.) 44, 12 L. ed. 337; *McGarvey v. Darnall,* 134 Ill. 367, 25 N. E. 1005, 10 L. R. A. 861; Story on Conflict of Laws, sec. 522; Freeman on Judgments, sec. 163; *Judy v. Kelley,* 11 Ill. 211, 50 Am. Dec. 455; *Rosenthal v. Renick,* 44 Ill. 202.)

It appears from the record in this case that new and additional evidence is now before this court, which was never submitted to the supreme court of the state of Utah, which said in the case of *Hilton v. Roylance* that not a single officer of the church who was qualified was put upon the stand to testify as to the meaning of the word "sealed" in Mormon parlance, and it appearing from the present record that we have the testimony of an apostle of the Mormon church and editor of the "Deseret News," the official organ of the church, as to the meaning of the term "sealed," it is certainly competent and proper for this court, there being a new record in the case, to consider and determine the question as to whether or not Mrs. Hilton was the wife and is the surviving widow of John R. Park. (*Arthur v. Israel,* 15 Colo. 147, 22 Am. St. Rep. 381, 25 Pac. 82, 10 L. R. A. 693; *Kimball v. Grantsville City,* 19 Utah, 394, 57 Pac. 1, 45 L. R. A. 628.)

The constitutional provision, providing that full faith and credit should be given to the records and judicial proceedings of each of the states relates only to conclusiveness of such judgments as between the parties to them and their privies. (*Wiggins Ferry Co. v. Chicago etc. Co.,* 11 Fed. 383, 3 McCrary, 609; *Bowen v. Johnson,* 5 R. I. 112, 73 Am. Dec. 49.)

Respondent should not be permitted to obtain any relief herein on the grounds of gross laches, public policy, public decency, and public morality, and she is estopped from obtaining any relief whatsoever, in this case, or from claiming, asserting or establishing any right to the property of which Dr. Park died possessed in the state of Idaho. (*Israel v. Arthur, supra; Whitney v. Fox,* 166 U. S. 637, 17 Sup. Ct. 713, 41 L. ed. 1145; *Speidel v. Henrici,* 120 U. S. 387, 7 Sup. Ct. 610, 30 L. ed. 718; *Hammond v. Hopkins,* 143 U. S. 250, 12 Sup. Ct. 418, 36 L. ed. 134; *Sedlak v. Sedlak,* 14 Or. 540, 13 Pac. 425; *Arthur v. Israel,* 15 Colo. 147, 22 Am. St. Rep. 381, 25 Pac. 82, 10 L. R. A. 693; *Nichols v. Nichols,* 25 N. J. Eq. 66; *Mohler v. Shank,* 93 Iowa, 273, 57 Am. St. Rep. 274, 61 N. W. 981, 34 L. R. A. 161.)

N. V. Jones, and O. R. Soule, for Respondent.

The determination of the personal status of a party in a case brought to determine the validity of marriage or for a divorce is a question in which the public has an interest, and when matters of fact, together with the status of the parties, have once been determined by a competent court, having jurisdiction of the parties, and of the subject matter involved in the action, such judgment or decree determines the question of personal status as against all the world. Being an action *in rem*, it is binding against strangers, and such judgment is admissible in evidence against strangers and *res adjudicata* for all purposes. (24 Am. & Eng. Ency. 755-827; and numerous citations thereunder; 2 Elliott on Evidence, secs. 1530-1532; Abbott's Trial Evidence, 2d ed., 128; Brad. on Evidence, 2d ed., 100, 110, 112, 117, and citations; 1 Herman on Estoppel and Res Adjudicata, secs. 290-296, inclusive, pp. 79-81, 115, 136, 137; 23 Cyc. 1319, par. 9, and authorities cited under note 57, 1408, par. "C," 1410, par. "E"; 2 Black on Judgments, 795, 803, 813, et seq.; 7 Ency. of Ev. 839, 849; *Atkinson v. McDonald,* 108 Wis. 8, 81 Am. St. Rep. 878, 84 N. W. 171; *Bonnella v. Maduel,* 26 La. Ann. 112; *In re Reading Iron Works Estate,* 149 Pa. 182, 24 Atl. 202; *Railroad Equipment Co. v. Blair,* 145 N. Y. 607-611, 39 N. E. 962; *Crane v. Pacific Bank,* 106 Cal. 64, 39 Pac. 215, 27 L. R. A. 562.)

The appellant is concluded and estopped by law from raising the question of the marital status of respondent again, under the general rule in relation to *res adjudicata,* for the reason that it appears from the record that he was a party in the two Utah cases, being plaintiff in the case of S. W. Stewart, Executor of John R. Park, v. Annie F. A. Hilton, and defendant; also, in *Re Park Estate.* He was also represented by his attorneys of record in the case of *Hilton v. Roylance,* 25 Utah, 129, 95 Am. St. Rep. 821, 69 Pac. 660, 58 L. R. A. 723. In all these three cases, and in the case at bar, he either sued or defended as executor of the will of John R. Park, being in the same capacity in each and every

case. (24 Am. & Eng. Ency. 735, 737, 738, and cases cited.) A foreign executor or the executors appointed in pursuance of the will, in two different states, are in privity with each other as regards the creditors of the decedent. (24 Am. & Eng. Ency. 754.) Executors in different states are in privity with each other, bearing to the creditors the same responsibility as if there was but one executor. (13 Am. & Eng. Ency. 920, 921, and cases cited.)

Any contract which is a valid marriage, according to the law of the place of the contract, is valid everywhere. (19 Am. & Eng. Ency. 1211, and cases cited.)

A judgment rendered in one state or country by a court of competent authority, having the necessary jurisdiction, is absolutely conclusive as to the merits of the controversy which it settles, and to that extent is binding upon the courts of all other states and countries, and will be recognized by them as conclusive of the facts adjudicated. (13 Am. & Eng. Ency. 977, and cases cited.) The effect of a foreign judgment must be the same as in the state where it was rendered. (22 Cyc. 1545, 1546, and cases cited; 2 Elliott on Evidence, sec. 1534, 1535; Black on Judgments, sec. 859; 30 Cent. Dig., secs. 1488, 1489, and cases cited; 7 Ency. of Ev. 839-849.)

The question of estoppel in cases where widows and married women have rights was fully discussed and passed upon in the following Utah cases: *Norton v. Tufts,* 19 Utah, 470, 57 Pac. 409; *United States v. Simpson,* 4 Utah, 227, 7 Pac. 257; *In re Christiansen,* 17 Utah, 412, 70 Am. St. Rep. 794, 53 Pac. 1003, 41 L. R. A. 504; *Hilton v. Roylance,* 25 Utah, 129, 95 Am. St. Rep. 821, 69 Pac. 660, 58 L. R. A. 723; *Palmer v. Palmer,* 26 Utah, 31, 99 Am. St. Rep. 820, 72 Pac. 3, 61 L. R. A. 641.

STEWART, J.—John R. Park died at Salt Lake City, Utah, about August 30, 1900. He left a last will and testament, by the provisions of which all his property was devised and bequeathed to the University of Utah. Samuel W. Stewart was named as executor, under the will, and duly

qualified as such in the county of Salt Lake, state of Utah, and afterward in the county of Fremont, in the state of Idaho, and as such administered the estate of said deceased in the state of Utah, and also in the state of Idaho.   He filed his final account as such executor in the county of Fremont in this state, and petitioned for a distribution of the property in said state in pursuance of the terms of said will. Annie F. A. Hilton, respondent herein, filed objections to the distribution of said estate to the University of Utah, and claimed and alleged that she was the surviving wife of said John R. Park, and as such was entitled to a one-half in value of the real estate of which Dr. Park died seised in the county of Fremont in this state.

The issue thus presented was tried in the probate court of Fremont county, which held and decided that said Annie F. A. Hilton was the surviving wife and widow of said John R. Park, deceased, and as such was entitled to a one-half in value of all his real property situated in said county.   From this decision an appeal was taken to the district court of the sixth judicial district in and for said county, where a like judgment was rendered.   From this latter judgment the executor appeals to this court.

Among other things, the trial court found that Annie F. A. Hilton was the wife of John R. Park, deceased, at the time of his death, and his surviving widow, and as such was entitled to a one-half in value of all the real property of which the deceased was seised at the time of his death in said county, subject to his debts and expenses of administration.

Upon the trial, the respondent offered in evidence, and the same was admitted over the objections of the appellant, a decree of the third judicial district court in and for Salt Lake county, state of Utah, in the *Matter of the Estate of John R. Park, Deceased;* also the complaint, amended answer, findings of fact and conclusions of law, and a decree of the third judicial district court in and for Salt Lake county, state of Utah; in the case of *Samuel W. Stewart, Executor, v. Annie F. A. Hilton;* also the transcript of testimony and decree in the case of *Annie F. A. Hilton v. Rosa P. Roylance,* a case

tried in the same court. These three cases, to wit, *In re Park Estate, Stewart v. Hilton,* and *Hilton v. Roylance,* were all tried together, and all appealed simultaneously and heard together in the supreme court of the state of Utah. The opinions in these cases are to be found in 25 Utah, at pp. 129, 160 and 161 (95 Am. St. Rep. 821, 69 Pac. 660, 5 L. R. A. 723.) Samuel W. Stewart, executor of the estate of John R. Park, deceased, prosecuted a second appeal to the supreme court of Utah, and that court affirmed the former decisions in an opinion, found in 29 Utah, at p. 257 (81 Pac. 83).

It is contended upon the part of the appellant that the court erred in admitting in evidence the several decrees rendered in the courts of Utah, alleging that the same were irrelevant, incompetent, immaterial and hearsay, and in no way pertaining to the issues in this case, and that such decrees were of no force or binding effect upon the parties to this action.

It is also contended that the trial court erred in finding that John R. Park and Annie F. A. Hilton, petitioner and respondent herein, intermarried at Salt Lake City, in the county of Salt Lake, and territory of Utah, on December 5, 1872, for the reason, as alleged, that the evidence does not support said finding.

It is next contended that the finding of the court to the effect that John R. Park and Annie F. A. Hilton were husband and wife, and that the said Annie F. A. Hilton is the surviving wife and widow of John R. Park, is erroneous, for the reason that the evidence does not support such finding.

It is next contended that the conclusion of the court to the effect that Annie F. A. Hilton is entitled, as the surviving wife and widow of said John R. Park, to a one-half in value of all the real property of which decedent died seised in the county of Fremont, state of Idaho, subject to the debts of decedent and the expenses of administration, is erroneous.

The contentions of appellant present two questions: First, is the petitioner the surviving wife and widow of John R. Park, deceased? If this question be answered by this court

in the negative, the second question becomes of no importance. If, however, this court should answer the above inquiry in the affirmative, then it becomes necessary to consider the next question, and that is, can the petitioner, as such surviving wife and widow, maintain this action in support of her interest as such widow in the property owned by said John R. Park at the time of his death, in Fremont county, Idaho?

The court admitted in evidence the various decrees objected to, upon the theory, as contended by respondent, that they were *res adjudicata* of the marriage status of Dr. Park and Annie F. A. Hilton, and binding upon this court as such. If this court should sustain this contention, it would be unnecessary to examine as an original proposition the question of the validity of the marriage between John R. Park and Annie F. Armitage, or whether, at the time of Dr. Park's death, Mrs. Hilton was his surviving wife and widow.

The first question, then, for our consideration, is: Were the decrees offered in evidence admissible and binding upon this court? This question depends upon the force and effect to be given to such decrees by the courts of this state.

The case of *Hilton v. Roylance*, 25 Utah, 129, 95 Am. St. Rep. 821, 69 Pac. 660, 58 L. R. A. 723, was an action brought by respondent as the surviving wife and widow of John R. Park, deceased, claiming as such widow to be entitled to one-third of certain real estate which the deceased in his lifetime sold to the defendant, demanding that said real property be set apart to her as her separate property. The supreme court of Utah in that case rendered a very exhaustive opinion. The main question discussed and decided by the court was the effect of the "sealing" ceremony between John R. Park and Annie F. Armitage, on December 5, 1872, and the effect of a church divorce granted by the Mormon church to said parties, and the right of said Annie F. A. Hilton to succeed to an interest in the property owned by said Park at the time of his death. The marriage ceremony involved was as follows:

"John Rockey Park, Born Tiffin, Seneca, Ohio, 7 May, 1833. Annie Flora Armitage, born Nottinghill, London, 19 February, 1853. The above parties were sealed by Prest. D. H.

Wells in the presence of Emeline Free Young, at her residence in Salt Lake City, U. T., December 5, 1872. The lady being on her supposed deathbed. Daniel H. Wells.''

In that case the court held that the ''sealing'' ceremony of the Mormon church, performed by a church officer, created a common-law marriage between the parties.

In the case of *Stewart v. Hilton,* 25 Utah, 160, 69 Pac. 1134, the action was brought by the executor of the last will and testament of John R. Park, deceased, against Annie F. A. Hilton, to quiet title to certain property of which disposition was made in the will, and in which the defendant claimed an interest as the widow of said deceased, and the supreme court followed the decision of *Hilton v. Roylance, supra,* to the effect that Annie F. A. Hilton was the wife and surviving widow of John R. Park, deceased, and therefore entitled to her widow's interest.

The case of *Estate of Park,* 25 Utah, 161, 69 Pac. 671, was an action wherein Annie F. Hilton presented a petition to the court, praying that she be adjudged to be the surviving wife and widow of John R. Park, deceased, and as such that she be allowed a certain sum per month out of the estate of the deceased for maintenance and support. The court held that the questions of law presented, except that relating to the family allowance, were the same as those presented in the case of *Hilton v. Roylance,* and the decision in that case was followed.

Thus, it will be seen that in these three cases the supreme court of Utah approved the identical ceremony involved in this case, and held and decided the same to be a common-law marriage, and that Annie F. Armitage was married to John R. Park, and, after his death, was his surviving wife and widow.

In the case of *Hilton v. Roylance, supra,* after full discussion of the question, the court concludes:

''As a result of our investigations, the conclusion that the sealing ceremony performed in this case established the marriage status and created the relations of husband and wife, is irresistible. The marriage, then, having been lawfully created, was it in force at the time when the respondent pur-

chased the property in dispute? This question must be answered in the affirmative unless the marriage status had previously been lawfully dissolved. The only thing, so far as shown by the evidence, that had ever been done toward dissolving it was the procuring of the church divorce, to which reference was heretofore made."

The supreme court of Utah, in commenting upon these decisions, in the case of *In re Park Estate,* 29 Utah, 257, 81 Pac. 83, says: "In the case of *Hilton v. Roylance,* 25 Utah, 129, 95 Am. St. Rep. 821, 69 Pac. 660, 58 L. R. A. 723, it was, *inter alia,* held and decided that the petitioner herein, who was the plaintiff therein, was the lawful wife of John R. Park, and that upon his death she became his lawful widow, and entitled to her share in his estate as such widow."

In the case of *Hilton v. Roylance,* the first question determined was whether or not the plaintiff was the widow of the deceased. In order to establish that fact, it was necessary to prove the marriage between Park and Miss Armitage, That suit involved, directly, the validity of the marriage between Park and Miss Armitage, and whether Mrs. Hilton was the widow of Park. It was necessary for the court to judicially determine that question before the court could determine her interest in the property of the deceased.

The case of *Stewart, Executor, v. Hilton* directly involved the question of the marriage of Park and Armitage and whether or not Mrs. Hilton was the surviving wife and widow of Dr. Park at the time of his death, for, in that case, her right and interest in property disposed of by Dr. Park by his will was involved.

The case of *Hilton v. Stewart, Executor,* presented for judicial determination the question as to whether or not Mrs. Hilton was the wife and widow of John R. Park, deceased.

The case of *In re Park Estate* directly presented the question of the validity of the marriage of Dr. Park and Mrs. Hilton and whether or not Mrs. Hilton was the surviving wife and widow of Dr. Park.

It will thus be seen that in four different decisions the supreme court of the state of Utah judicially determined the

marriage status of John R. Park and Annie F. A. Hilton, and adjudged that they were husband and wife at the time of Park's death, and that the "sealing" ceremony of December 5, 1872, was a common-law marriage between said parties. This marriage relation continued up until the time of Park's death, unless the same was terminated by the divorce granted by the Mormon church. The validity of this divorce was also involved and judicially determined in the case of *Hilton v. Roylance*, 25 Utah, 129, 95 Am. St. Rep. 821, 69 Pac. 660, 58 L. R. A. 723. This divorce, granted by the Mormon church in March, 1873, read as follows:

"Know all men by these presents: That we, the undersigned, John R. Park and Annie, his wife, before her marriage to him Annie Armitage, do hereby mutually covenant, promise, and agree to dissolve all the relations which have hitherto existed between us as husband and wife, and to keep ourselves separate and apart from each other, from this time forth. In witness whereof we have hereunto set our hands at Salt Lake, Utah, this 19 day of March, A. D. 1873. John R. Park. Annie Flora Park. Signed in the presence of D. McKenzie, James Jack."

In that case the court, in discussing the effect of this divorce, says:

"The marriage, then, having been lawfully created, was it in force at the time when the respondent purchased the property in dispute? This question must be answered in the affirmative, unless the marriage status had previously been lawfully dissolved. The only thing, so far as shown by the evidence, that had ever been done toward dissolving it, was the procuring of the church divorce, to which reference was hereinbefore made. That divorce counsel for the respondent themselves admit to be null and void, because, while the church could solemnize a marriage, it had no power to dissolve it. Such was the decision of this court in *Norton v. Tufts*, 19 Utah, 470, 57 Pac. 409, . . . . where a like divorce granted by the same church was in question. Nor is there anything to show that the marriage contract was ever dissolved previous to the death of the husband. The mere fact

that both parties believed the church divorce to be valid, and that the plaintiff, so believing, thereafter became a party to another marriage ceremony, did not dissolve her former marriage. Such being the case, upon the death of Dr. Park she became his lawful widow, and entitled to her share in his estate as such widow."

Thus, we see that the supreme court of Utah not only passed upon the effect and validity of the marriage of Park and Hilton, but also upon the validity of the divorce granted by the Mormon church.

The case at bar involves the question as to whether or not Mrs. Hilton was the surviving wife and widow of Dr. Park at the time of his death, and as such entitled to a one-half in value of the property owned by him in Fremont county, Idaho, at the time of his death. From a comparison of the cases decided by the supreme court of Utah, with the case now under consideration, it will be seen that while the parties were not the same in all cases, yet the question of the marriage status of John R. Park and Annie F. A. Hilton was necessarily involved in all of said cases, and the court, in deciding such cases, judicially determined that question, and in each instance held that Annie F. A. Hilton was the surviving wife and widow of John R. Park at the time of his death.

To make the matter *res adjudicata*, it is immaterial that the question alleged to have been settled by a former adjudication was determined in a different kind of proceeding or a different form of action from that in which the estoppel is claimed. The test is, was the question actually and directly in issue and judicially determined in the former suit between the same parties or their privies by a court of competent jurisdiction? (23 Cyc. 1215-1221.) Applying this test to the decrees offered in evidence, it clearly appears therefrom that the marriage status of Dr. Park and Mrs. Hilton was directly in issue in each of said cases and judicially determined.

It is argued, however, by appellant that the parties are not the same. In the case of *Stewart, Executor, v. Annie F. A. Hilton,* 25 Utah, 160, 69 Pac. 1134, the parties were identically the same as the parties in the suit now under considera-

tion, and in the case of *In re Park Estate*, 29 Utah, 257, 81 Pac. 83, the parties were the same. But counsel for appellant argues that S. W. Stewart, as executor in the state of Utah, is not the same as S. W. Stewart, executor, in the state of Idaho. S. W. Stewart was nominated executor by the provisions of the will, and appointed as such in the state of Utah, and upon application also appointed as such in the county of Fremont, this state. In his capacity as executor in the state of Utah, and as administrator under the will in the state of Idaho, he represented the estate of John R. Park, and the same interests, although his appointment came from a different source. While acting as such executor, he at all times occupied the same position with reference to the estate and with reference to all controversies urged against said estate. Samuel W. Stewart, executor under the will, in the state of Utah, is the same as Samuel W. Stewart, administrator with the will annexed, in the state of Idaho, in all suits to which he is a party representing said estate. The general rule, in relation to estoppel by judgment, is that the judgment binds the parties to the action and their privies. The judgments, therefore, offered in evidence, in which the executor and the estate were parties, and in which the marriage of Mrs. Hilton and Dr. Park was directly involved and judicially determined, estop such executor from questioning such marriage status in a suit between the same parties involving said marriage status in this state. (24 Am. & Eng. Ency. of Law, 735-738.)

There is another reason which requires this court to adopt and follow the decisions of the supreme court of Utah with reference to the validity of the marriage between John R. Park and Mrs. Annie F. A. Hilton and their marriage status at the time of the death of Dr. Park. Sec. 2428, Rev. Stat., provides:

"All marriages contracted without this state, which would be valid by the laws of the country in which the same are contracted, are valid in this state."

The marriage of Dr. Park and Mrs. Annie F. A. Hilton, having been performed in the state of Utah and held valid under the laws of that state, must also be held valid when called in

question in this state.    This statute merely announces the general rule of law, as we understand it, that any contract, which is a valid marriage according to the law of the place where the contract is made, is valid everywhere.    (19 Am. & Eng. Ency. of Law, 1211; 23 Cyc. 1319, 1406; 2 Elliott on Evidence, secs. 1530-1532; *In re Newman*, 75 Cal. 213, 7 Am. St. Rep. 146, 16 Pac. 887; Herman on Estoppel and Res Adjudicata, secs. 290-296, inc.; 2 Van Fleet's Former Adjudication, sec. 517.)

The appellant in this case, in four different forms of action, has litigated through all the courts of the state of Utah the question as to the validity of her marriage to John R. Park, and her right and interest, as his surviving wife and widow, and the court of last resort in that state has sustained the validity of such marriage and her marriage status.    Upon her application for the wife's interest in property left by the deceased in this state, the executor again interposes the same objection, and presents to the court for consideration and determination the identical question presented to and determined by the highest court of the state of Utah.    The judgment of the supreme court of the state of Utah, upon identically the same facts and with reference to the same matter involved in this case, ought to put an end to all further litigation on account of the same matter, and will control and govern this court in its decision upon the same questions involved and decided by such court.    (*Elliott v. Porter*, 6 Ida. 684, 59 Pac. 360.)

Counsel for appellant also argue that, even though the trial court was correct in admitting said decrees in evidence, and in holding that Annie F. A. Hilton was the surviving wife and widow of John R. Park, deceased, yet she should not be permitted to maintain this suit and have her interest in the property of Dr. Park set off to her, on the ground of laches, public policy, public morality and decency.    A wife, however, is not guilty of laches because she does not commence an action against her husband during his lifetime and assert her interest or right to his property.    Her right of action accrued upon his death, and the record in this case shows that soon

after his death she commenced an action in the courts of Utah to establish her right to her interest in the property of the deceased, and that she has waged such litigation persistently ever since. She has been most diligent in attempting to protect her rights as such surviving wife and widow. There is nothing in the record to indicate any laches on her part.

Counsel, however, argue that she should be estopped from asserting her rights because of public policy, morality and decency. This argument might have some force were Mrs. Hilton attempting to assert a right or interest in the property of William Hilton, the second husband, but the validity of the marriage of William Hilton and Mrs. Hilton has not been put in issue. The facts or effect of that question has not been determined. The mere fact that she did not assert her right to an interest in Dr. Park's estate until after his death is not a ground for holding that she is estopped from asserting it after his death. The parties may have accepted the divorce in good faith, because it was part of the tenets of the Mormon church, but the courts of Utah having held the divorce void, this court is controlled by such decision, and the status of the petitioner with reference to William Hilton is not involved or called in question in this case. The claim she asserts arises out of her marriage with John R. Park, and her rights are to be determined by that marriage relation, and not her relation with Hilton.

Appellant, on the trial, introduced in evidence a decree rendered by the district court of Salt Lake county, Utah, in the case of *Hilton v. McCornick*, in which McCornick claimed to have purchased property from one of Park's grantees without any knowledge of the rights or status of the widow. The judgment in that case was directly contrary to the adjudication of this same question by the highest court of that state and at a time prior to the decision of *Hilton v. In re Park Estate*, 29 Utah, 257, 81 Pac. 83, which approved and followed *Hilton v. Roylance.* We think that this decision of the trial court should not be received as evidence overruling the decisions of the supreme court of that state.

We conclude, therefore, that the findings and judgment of the trial court were right. The judgment is affirmed. Costs awarded to the respondent.

Ailshie, C. J., and Sullivan, J., concur.