367 P.2d 861

**J. Bracken LEE, Plaintiff and Respondent,**

v.

**STATE of Utah, Board of State Canvassers, Sherman J. Preece, State Treasurer, Sid Lambourne, State Auditor, Walter L. Budge, Attorney General, members of the Board of State Canvassers, Defendants and Appellants.**

**No. 9530.**

Supreme Court of Utah.

Jan. 8, 1962.

4. See Annotation in 92 L.Ed. 548.

Walter L. Budge, Atty. Gen., Ronald N. Boyce, Asst. Atty. Gen., for appellants.

Jack L. Crellin, Norman W. Kettner, A. M. Marsden, James L. Barker, Jr., Salt Lake City, for respondent.

WADE, Chief Justice.

This appeal is from a summary judgment of the Third Judicial District Court holding invalid a constitutional amendment submitted to and approved by the majority of people voting on the amendment at the last general election held in the State of Utah on November 8, 1960.

The facts upon which the court based its decision were stipulated. The 1959 session of the Utah State Legislature [Laws 1959, p. 370] adopted a joint resolution proposing to amend Article VII of the Utah Constitution by adding a new Section 24, to read as follows:

"Notwithstanding any general or special provisions of the Constitution the legislature, in order to insure continuity of state and local governmental operations in periods of emergency resulting from disasters caused by enemy attack, shall have the power and immediate duty (1) to provide for prompt and temporary succession to the powers and duties of public offices, of whatever nature and whether filled by election or appointment, the incumbents of which may become unavailable for carrying on the powers and duties of such offices, and (2) to adopt such other measures as may be necessary and proper for insuring the continuity of governmental operations including, but not limited to the financing thereof. In the exercise of the powers hereby conferred the legislature shall in all respects conform to the requirements of this Constitution except to the extent that in the judgment of the legislature so to do would be impracticable or would admit of undue delay."

The above proposed amendment was published in each county in the State of Utah in a newspaper for a period of two months before the election held on November 8, 1960. On the ballot, the proposed amendment was submitted in the following language:

"Constitutional Amendment Number One:

"Shall Section 24 of Article VII of the Constitution of the State of Utah be amended to grant temporary emergency powers to the Legislature in the event of war or emergency caused by war."

A majority of the people who voted on the Amendment, but less than a majority of the electors voting in the general election favored the Amendment.

Article XXIII, Section I of the Utah State Constitution provides that the legislature may initiate proposed amendments to the Constitution and submit them to the electorate at the next general election for approval or rejection" and if a majority of the electors voting thereon shall approve the same, such amendment or amendments shall become part of this Constitution." It further provides that "[I]f two or more amendments are proposed, they shall be so submitted as to enable the electors to vote on each of them separately."

Among the grounds urged in the lower court to hold the Amendment invalid were (1) that less than a majority of the electors voting in the general election approved the proposed amendment and (2) that by its provisions the Amendment contained more than one amendment to the Constitution but these were not submitted in a manner to enable the electors to vote on each separately.

As to the first ground, suffice it to say that Section I of Article XXIII clearly provides that if a majority of the electors voting *thereon,* that is, on the proposed amendments, favor them, they shall become a part of our Constitution. It does not say that there must be approval by a majority of the electors casting votes in the general election to enable passage of a constitutional amendment submitted by a joint resolution of the Legislature.

However, the second ground has merit. The proposed Amendment purported to amend Article VII of the State Constitution by adding a new section thereto. Article VII pertains to the Executive Department of our State Government, its powers, duties and qualifications of its officers. That portion of the proposed Amendment contained in the provision numbered (1) giving the legislature the power "to provide prompt and temporary succession to the powers and duties of public offices, of whatever nature and whether filled by election or appointment, the incumbents of which may become unavailable for carrying on the powers and duties of such offices" means that the legislature may provide for the replacement of officers who have become unavailable because of disaster caused by enemy attack. This is so because the Amendment purports to

**18**

amend Article VII and that Article relates to the executive department and officers and agents.

The second portion of the proposed Amendment is much broader and is not reasonably subject to an interpretation that it has reference to the powers and duties of the Executive Department. It purports to grant the legislature the power to do anything which would be necessary for insuring the continuity of governmental operations if in its judgment, to conform to the requirements of our Constitution would be "impracticable or would admit of undue delay". This appears to grant the legislature more than power to change the constitutional requirements relating to powers and duties of the Executive Department in case of "war or emergency caused by war". There is nothing in the wording of the second portion of the proposed Amendment or in the Amendment as submitted on the ballot which limit the powers of the legislature in ignoring the provisions of our Constitution in the event of war or emergency caused by war to the powers and duties of the Executive Department. What it purports to grant, is power to a legislative body in order to ensure continuity of state and local governments in the event of emergency caused by enemy attack to ignore any provision of the entire Constitution if in its judg-

ment, it is necessary to do so. Such a grant of power appears to be more than an amendment of the powers and duties of the Executive Department with which Article VII of our Constitution deals.

Appellants contend, however, that it is not necessary that every possible change or abolition of the Constitution be set out separately on the ballot if the various propositions are concerned with the general subject of the Amendment and are not separate and distinct purposes not dependent on, or connected with each other.[1] They further contend since the purpose of the Amendment was to ensure the continuity of state and local government during a period of emergency caused by war or enemy attack, the propositions cannot be said to be independent of each other and therefore did not violate the requirement that if two or more Amendments to the Constitution are proposed, they must be submitted separately

The fallacy in appellants' argument that there are not two separate and distinct amendments in the two propositions submitted under the one Amendment, because the Amendment deals with continuity of state and local government during an emergency caused by war, is that it assumes that the two propositions are dependent on each other, and so concerned

---

1. 16 C.J.S. Constitutional Law § 9; Mc-Bee v. Brady, 15 Idaho 161, 100 P. 97;

Kerby v. Luhrs, 44 Ariz. 208, 36 P.2d 549, 94 A.L.R. 1502.

with each other that it would be undesirable to have one without the other, and an electorate which favored one proposition would therefore necessarily favor the other. However, an amendment which gives the legislature the power to provide for the temporary succession to the powers and duties of public offices is not dependent upon or concerned with the right of this same legislative body to ignore all provisions of the constitution, if in its judgment such is necessary to insure the continuity of government. This latter proposition in effect gives the legislature a right to temporarily repeal the entire constitution, if in its judgment that would be necessary to insure continuity of government, once there has been an emergency created by enemy attack or war.

The first proposition amends Article VII to make it possible for the legislature instead of an executive officer to provide for temporary succession to public offices where the incumbents have become unavailable. It is not necessary for insuring the continuity of government that the legislature also have the power to use its judgment whether it should conform to requirements of other parts of our Constitution in adopting measures it may deem necessary. The following quote from Mathews v. Turner [2] is apropos here wherein that court said: "It is argued that if the proposed amendment has 'but one object or purpose' it is valid, even though it may contain many different propositions, if they are related to said 'one object or purpose.' Such, however, is not the provision of section 2, article 10. It provides that if two or more amendments are submitted at the same election they shall be submitted separately, and this is true even though they may pertain to the same general object or purpose. *An entire Code of laws cannot be embodied in an amendment to the Constitution merely because said laws pertain to one 'object or purpose.'*" (Emphasis ours.) This is equally applicable to the power to change an entire Constitution.

We are of the opinion that the first proposition is in no way dependent on the second proposition so that the passage of both is necessary to ensure the workability of the other, and that it is possible that if the electorate were given a choice, it might have approved one, and disapproved the other. The court therefore did not err in holding this constitutional amendment invalid. Affirmed. No costs awarded.

HENRIOD, McDONOUGH, CALLISTER and CROCKETT, JJ., concur.

2. Mathews v. Turner, 212 Iowa 424, 236 N.W. 412–415.